IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CASE NUMBER: 4:18CR260 |
| | ) | |
| AARON MCCARTHY | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
DISCLOSURE OF EXCULPATORY AND IMPEACHING INFORMATION**

I.
INTRODUCTION

Now comes the above-referenced Defendant, moves for disclosure of "impeaching information". This motion raises the questions of what duty the government has to disclose, when that duty arises, and what disclosure is required. Each issue is addressed in turn.

A. The Duty of Disclosure

To begin with, due process requires that the government not suppress evidence favorable to the accused or discrediting to its own case, and, upon request, that it disclose to the defense all such information. Brady v. Maryland, 373 U.S. 83 (1963); United States v. Agurs, 427 U.S. 97 (1976). See also, Mooney v. Holohan, 294 U.S. 103 (1935); Pyle v. Kansas, 317 U.S. 213 (1942). This requirement of candor by the sovereign encompasses information which bears upon the credibility of its witnesses as well as matters more directly material to guilt or innocence. Napue v. Illinois, 360 U.S. 264 (1959); Giglio v. United States, 405 U.S. 150 (1972). See generally, Williams v. Dutton, 400 F.2d 797 (5th Cir. 1968); United States v. Severdija, 790 F.2d 1556 (11th Cir. 1986). As stated by the Supreme Court in Napue v. Illinois, 360 U.S. at 269:

> The jury's estimate of the truthfulness and reliability of a given

> witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.

Moreover, in this federal prosecution the Court's supervisory power to safeguard "the correct administration of justice in the federal courts" reinforces the due process requirement of disclosure. E.g., United States v. Consolidated Laundries Corp., 291 F.2d 563, 571 (2d Cir. 1961); United States v. Miller, 411 F.2d 825, 832 (2d Cir. 1969); United States v. Leja, 568 F.2d 493, 499 (6th Cir. 1977). See generally, Communist Party of the United States v. S.A.C.B., 351 U.S. 115, 124 (1956).

### B. Pre-trial Disclosure Should Be Granted

Secondly, disclosure of information impeaching witnesses' credibility must be timed to enable effective preparation for trial. E.g., United States v. Polisi, 416 F.2d 573, 578 (2d Cir. 1969). See United States v. Kaplan, 554 F.2d 577, 580 (3d Cir. 1977); United States v. Baxter, 492 F.2d 150, 173-74 (9th Cir. 1973); cf. United States v. Opager, 589 F.2d 799, 804-05 (5th Cir. 1979) (crucial importance to accused of pre-trial interviewing and/or investigation of potential witnesses). As pointed out in United States v. Pollack, 534 F.2d 964, 973 (D.C.Cir.1976), (Lumbard, J., sitting by designation),

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure. See e.g., United States v. Elmore, 423 F.2d 775, 779 (4th Cir. 1970); United States v. Deutsch, 373 F.Supp. 289, 290-91 (S.D.N.Y. 1974).

See also, Gorham v. Wainwright, 588 F.2d 178, 180 (5th Cir. 1979); Grant v. Alldredge, 498 F.2d 376, 381-82 & n.5 (2d Cir. 1974); Clay v. Black, 479 F.2d 319, 320 (6th Cir. 1973) (per curiam); Hamric v. Bailey, 386 F.2d 390, 393 (4th Cir. 1967); Ashley v. Texas, 319 F.2d 80, 85 (5th Cir.

1963); United States v. Grandmont, 680 F.2d 867, 873 (1st Cir. 1982); United States v. Flaherty, 668 F.2d 566, 592 (1st Cir. 1981). Significantly, this pre-trial motion does not call upon the Court to overturn a conviction or to weigh such questions as materiality and prejudice in retrospective review of a trial record, the usual vantage of the appellate decisions. See United States v. Five Persons, 472 F.Supp. 64, 68 (D. N.J. 1979). Rather, the Court must prospectively decide under Brady whether "the subject matter of the [specific] request is material, or indeed if a substantial basis for claiming materiality exists." United States v. Agurs, 427 U.S. 97, 106 (1976). Furthermore, the Court must also prospectively decide under Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedure whether the request embraces matter which is "material to the preparation of [the] defense." As to Rule 16(a)(1)(C), one court recently noted the special materiality of impeaching information:

> . . . aside from outright exculpatory items, it is difficult to imagine information more material to the preparation of the defense than credibility items for critical or major government witnesses.

United States v. Five Persons, 472 F.Supp. at 67.

Combining the force of Brady and Rule 16(a)(1)(C), Defendant JANARD BROWN has a powerful case for pre-trial disclosure. United States v. Thevis, 84 F.R.D. 47 (N.D. Ga. 1979). Numerous district courts have ordered such discovery both before and after the 1975 amendments which further liberalized Rule 16. E.g., United States v. Thevis, 84 F.R.D. 47 (N.D. Ga. 1979); United States v. Five Persons, 472 F.Supp. 64 (D. N.J. 1979); United States v. Goldman, 439 F.Supp. 337, 349 (S.D. N.Y. 1977); United States v. Dillard, 419 F.Supp. 1000, 1001 (N.D. Ill. 1976); United States v. Deutsch, 373 F.Supp. 289, 290-91 (S.D. N.Y. 1974); United States v. Quinn, 364 F.Supp. 432, 440 (N.D. Ga. 1973); aff'd on other grounds, 514 F.2d 1250 (5th Cir. 1975); United States v. Houston, 339 F.Supp. 762, 764 (N.D. Ga. 1972); United States v. Eley, 335 F.Supp. 353,

355-58 (N.D. Ga. 1972); United States v. Ahmad, 53 F.R.D. 186, 193-94 (M.D. Pa. 1971); United States v. Gleason, 265 F.Supp. 880, 884-87 (S.D. N.Y. 1967).

Indeed, even when the favorable information takes the form of a witness statement otherwise protected from pre-trial discovery by the Jencks Act (18 U.S.C. §3500), the prosecution must nonetheless disclose it as far in advance of trial as Due Process may practically require for the defense to make fair use of it. E.g., United States v. Narciso, 446 F.Supp. 252, 270-71 (E.D. Mich. 1977); United States v. Houston, 339 F.Supp. 762, 765-66 (N.D. Ga. 1972); United States v. Eley, 335 F.Supp. 353, 358 (N.D. Ga. 1972); United States v. Gleason, 265 F.Supp. 880, 887 (S.D. N.Y. 1967). See United States v. Harris, 458 F.2d 670, 677 (5th Cir. 1972). Compare United States v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979).

In conclusion, the Defendant seeks meaningful preparation for cross-examination and, if necessary, for the presentation of defense evidence. They offer avoidance of both the trial conundrums arising from Brady too little, Brady too late, as well as the specter of collateral attacks arising from the same. See, United States v. Five Persons, 472 F.Supp. 64, 68 (D.N.J. 1979); United States v. Flaherty, 668 F.2d 566, 592 (1st Cir. 1982). Pre-trial disclosure should be required in the interest of justice.

### C. The Duty To Disclose Applies To All Who Have Participated in the Prosecution

The duty to disclose applies not just to the prosecuting attorney, but also to law enforcement agents and others who have participated in this prosecution. Obviously, Brady would be a hollow guarantee if law enforcement agents could withhold information from the prosecuting attorney and thereby foreclose disclosures to the Defendants. Emmett v. Ricketts, 397 F.Supp. 1025 (N.D. Ga.

1975); United States v. Beasley, 576 F.2d 626, 632 (5th Cir. 1978); United States v. Bryant, 439 F.2d 642, 650 (D.C. Cir. 1971); United States v. James, 495 F.2d 434, 436 (5th Cir. 1974); United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973); Pennsylvania v. Ritchie, 107 S.Ct. 989 (1987). Furthermore, it is no defense to disclosure that the Defendants may or does have equal access to the information. United States v. Severdija, 790 F.2d 1556 (11th Cir. 1986).

II.

SPECIFIC REQUESTS FOR DISCLOSURE

To help focus the duty of disclosure, the Defendant is making specific requests for disclosure, itemizing likely sources of impeaching information within the knowledge or reach of the prosecution. See, United States v. Agurs, 427 U.S. 97, 106 (1976); Note, The Prosecutor's Duty to Disclose After United States v. Agurs, 1977 U. Ill. L.F. 690, 696, 698, 705, 709, 718.

1. The Defendant's requests for information regarding prior felony convictions and juvenile adjudications invokes a classic avenue of impeachment and appears directly within the ambit of Federal Rules of Evidence Rule 609. The Conference Committee Report to that rule speaks in terms of ". . . the need for the trier of the fact to have as much relevant evidence on the issue of credibility as possible." H.R.Rep. 93-1597, 93d Cong., 2d Sess. 9 (1974). Accord, Lewis v. United States, 408 A.2d 303, 307 (D.C. App. 1979). See generally, Beaudine v. United States, 368 F.2d 417, 421-22 (5th Cir. 1966). The inclusion of "guilty verdicts" in the request results from recent decisions authorizing their use, even though not reduced to judgment, for purposes of impeachment. United States v. Caraday, 466 F.2d 1191 (9th Cir. 1972) (per curiam); United States v. Rose, 526 F.2d 745 (8th Cir. 1976). Disclosure is plainly in order. E.g., United States v. Quinn, 364 F.Supp. 432, 445 (N.D.Ga. 1973), aff'd on other grounds, 514 F.2d 1250 (5th Cir. 1975); United States v.

Moceri, 359 F.Supp. 431, 435 (N.D.Ohio 1973); United States v. Leta, 60 F.R.D. 127, 131 (MD.Pa. 1973); United States v. Houston, 339 F.Supp. 762, 766 (N.D. Ga. 1972); United States v. Eley, 335 F.Supp. 353, 358 & n.4 (N.D. Ga. 1972); United States v. Jepson, 53 F.R.D. 289, 291-92 (E.D. Wis. 1971); United States v. Leichtfuss, 331 F.Supp. 723, 736 (N.D. Ill. 1971); United States v. Tanner, 279 F.Supp. 457, 471-72 (N.D. Ill. 1967); Lewis v. United States, 408 A.2d 303 (D.C. App. 1979) (excellent discussion). Discovery should also extend to production of any and all so-called "rap sheets" for the witness. United States v. Leichtfuss, 331 F.Supp. 723, 736 (N.D. Ill. 1971); See, United States v. Alvarez-Lopez, 559 F.2d 1155 (9th Cir. 1977).

  2. The Federal Rules of Evidence also give the Court discretion to permit a Defendant cross-examination of a witness as to specific instances of misconduct, so-called "bad acts", even though such behavior does not amount to felony conviction, if the evidence impeaches the witness' truthfulness. Fed.R.Evid. 608(b); United States v. Leake, 642 F.2d 715, 718-19 (4th Cir. 1981); United States v. Cole, 617 F.2d 151, 153-54 (5th Cir. 1980). This enactment appears to alter prior law in several circuits. 3 Weinstein's Evidence, para. 608[5], at 608-25 (1976). The purpose of such testimony, incidentally, is specifically to attack the witness' character and not to establish bias, interest, or prejudice. See, McCormick, Evidence §52, at 83 (2d ed. 1972). Since this is a permissible area of inquiry, the prosecution must disclose to the defense any behavior by its witnesses which arguably constitutes such "bad acts." United States v. King, 121 F.R.D. 277 (E.D.N.Y. 1988).

  3. The government has an institutional obligation to disclose any and all consideration which it has held out to a witness or which the witness subjectively hopes for or anticipates since such consideration directly gives rise to the inference of bias or interest. See generally, Moore v.

Kemp, 824 F.2d 847 (11th Cir. 1987); Bagley v. Lumpkin, 798 F.2d 1297 (9th Cir. 1986); Graham v. Wilson, 645 F.Supp. 664 (D.Colo. 1986); United States v. Mayer, 556 F.2d 245, 248 (5th Cir. 1977) (cross-examination of a prosecution witness who has prior dealings with the prosecution or other law enforcement officials "ought to be given the largest possible scope"; conviction reversed). A common example of such matter which must be disclosed to the defense is the making of promises or the holding out of other inducement for a witness to cooperate and testify against the Defendant. E.g., Annunziato v. Manson, 566 F.2d 410 (2d Cir. 1977); United States v. Sanfilippo, 564 F.2d 176 (5th Cir. 1977); Boone v. Paderick, 541 F.2d 447 (4th Cir. 1976); United States v. Tashman, 478 F.2d 129 (5th Cir. 1973); United States v. Harris, 462 F.2d 1033 (10th Cir. 1972). In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court made plain that this duty is an affirmative one which the government must discharge responsibly and that the ignorance of one prosecutor as to the promises made to a government witness by another prosecutor does not excuse the failure to disclose.

Here, the prosecution is obliged to exercise due diligence to determine what consideration, broadly defined, it has offered to its witnesses, or bestowed upon them or which they hope or expect and to disclose this impeaching information to the defense. The obligation includes the total compensation or benefits paid to or expected by each witness, United States v. Leja, 568 F.2d 493 (6th Cir.1977); United States v. Partin, 493 F.2d 750, 757-60 (5th Cir. 1974); See, United States v. Antone, 603 F.2d 566, 569-70 (5th Cir. 1979) (attorney's fees paid by state law enforcement officers cooperating in the investigation), any beneficial treatment in the tax, 21 U.S.C. §§7122 and 7623, or administrative realms, United States v. Wolfson, 437 F.2d 862, 874-5 (2d Cir. 1970), any assistance in the business world, United States v. DiCarlo, 575 F.2d 952, 958-60 (1st Cir. 1978), any assistance

in avoiding prosecution by other authorities, Azbill v. Pogue, 534 F.2d 195, 196 (9th Cir. 1976), any immunity grants, United States v. Dillard, 419 F.Supp. 1000 (N.D. Ill. 1976), omission from being named in an indictment as an unindicted co-conspirator, relief from forfeiture, United States v. Parness, 408 F.Supp. 440, 444-45 (S.D. N.Y. 1975), assistance in bonding out of custody, United States v. Garza, 574 F.2d 298, 301-02 (5th Cir. 1978), placement in protective custody, United States v. Librach, 520 F.2d 550 (8th Cir. 1975), special treatment while in custody, e.g., Chavis v. North Carolina, 637 F.2d 213, 225-26 (4th Cir. 1980), and status as an informer, United States v. Disston, 582 F.2d 1108 (7th Cir. 1978); United States v. Mele, 462 F.2d 918 (2d Cir. 1972). These examples, of course, are only intended to make the principle clear and do not exhaust the range of "consideration". To be clearer, the prosecution should disclose such sources of bias, motive or interest as potential financial reward by the United States, Wheeler v. United States, 351 F.2d 946 (1st Cir. 1965), or through its efforts, United States v. McCrane, 547 F.2d 204 (3d Cir. 1976) (per curiam); Patriarca v. United States, 402 F.2d 314, 319 (1st Cir. 1968), or, on the other hand, the potential of civil tax liability to the United States -- even though no promises of consideration or compromise may have been made. Although such inducements are, of course, relevant, a witness' expectations or hopes are what tells. United States v. Mayer, 556 F.2d 245, 249-50 (5th Cir. 1977); Farkas v. United States, 2 F.2d 644, 647 (6th Cir. 1924) (cited with approval in Alford v. United States, 282 U.S. 687, 693 (1931)).

4. In addition to promises of consideration which might promote a witness' cooperation with the government, the accused is entitled to be advised of any matter which might cause a witness to color his testimony in favor of the government out of fear or interest in self-preservation. The government must disclose both the carrot and the stick. E.g., United States v. Sutton, 542 F.2d 1239

(4th Cir. 1976) (threat by FBI agent to prosecute witness intended to induce witness' cooperation); United States v. MacCloskey, 682 F.2d 468, 479 (4th Cir. 1982) (government prosecutor "reminded" defense witness' attorney about Fifth Amendment).

With regard to the stick, sometimes it is overlooked that evidence of a witness' wrongdoing, even though not amounting to a felony conviction or comparable evidence of moral turpitude or bad character, may nonetheless be adduced when relevant to show the bias or self-interest of the witness. McCormick, Evidence, §40 at 78-80 (2d ed. 1972); United States v. Alvarez-Lopez, 559 F.2d 1155 (9th Cir. 1977). Typical of this category is information concerning the witness' possible vulnerability to prosecution, parole or probation revocation, or other sanction by the government. In United States v. Bonanno, 430 F.2d 1060 (2d Cir. 1970), the court condemned the government's failure to disclose an outstanding indictment against its witness since the pendency of the charge would have shown "possible motivation of the witness to testify favorably for the government." Id. at 1062. Similarly, in United States v. Padgent, 432 F.2d 701 (2d Cir. 1970), the court reversed the defendant's conviction because his counsel had been denied the right to question a government witness on cross-examination with regard to the witness' vulnerability to future indictment for bail jumping. See also, United States v. Crumley, 565 F.2d 945, 949-50 (5th Cir. 1978); United States v. Gerard, 491 F.2d 1300, 1304 (9th Cir. 1974).

Of course, other motivations besides fear of criminal sanctions are also material. For example, a threat to revoke citizenship, see, e.g., United States v. Haderlein, 118 F.Supp. 346 (N.D. Ill. 1953), or to deport the witness would surely qualify. Even without threats, so would the mere fact of a witness' imprisonment since he might well be "affected by fear or favor growing out of his detention." Alford v. United States, 282 U.S. 687, 693 (1931). See also, United States v. Croucher,

532 F.2d 1042, 1044-46 (6th Cir. 1976) (refusal to permit cross-examination of informer, a key government witness, as to prior arrests, other than ones resulting in convictions of felonies or misdemeanors involving moral turpitude; conviction reversed); United States v. Garcia, 531 F.2d 1303, 1306-07 (5th Cir. 1976) (evidence of a witness' mere arrest by the government without further prosecution might well furnish impeaching evidence of bias or prejudice); Hart v. United States, 565 F.2d 360 (5th Cir. 1978) (semble); United States v. Gurney, 393 F.Supp. 683 (M.D. Fla. 1974) (prosecution's use of legal process to compel the attendance of witnesses for the purpose of pre-trial interview prohibited because it is unauthorized and it puts the witness in a compromising position conducive to involuntary cooperation with the government); Smaltz, Tactical Considerations for Effective Representation During a Government Investigation, 16 Amer.Crim.L. Rev. 383, 398-403 (1979) (prosecution's requiring a witness to proffer and give it a preview of testimony as a condition precedent to granting him statutory immunity condemned as unauthorized and having "dramatic potential for influencing and shaping a witness' recollection and testimony to meet the government's needs").

5.   If a government employee serves as a prosecution witness, the Defendant is entitled to have access to his or her government personnel file in order to ascertain whether there is information within it which could be of an impeaching nature. United States v. Deutsch, 475 F.2d 55, 57-58 (5th Cir. 1973); United States v. Bizzard, 674 F.2d 1382, 1386 (11th Cir. 1982) (in camera inspection of FBI agent's personnel files). But see, United States v. Pitt, 717 F.2d 1334 (11th Cir. 1983). Similarly, in United States v. Morell, 524 F.2d 550, 552-55 (2d Cir. 1975), the court held that defense counsel were entitled to impeaching information in the confidential file of an informant

witness.  See also, United States v. Beekman, 155 F.2d 580 (2d Cir. 1946).  Law enforcement witnesses are, of course, not immune from this principle.  In United States v. Garrett, 542 F.2d 23 (6th Cir. 1976), the court reversed a drug distribution conviction in which the defendant had been denied both access to disciplinary records of the chief witness, a police officer who had been suspended from duty for refusal to take a urine test to see whether he had used hard drugs, and also had been restricted in cross-examining the officer as to why he had been suspended.  See, United States v. Hitchmon, 609 F.2d 1098 (5th Cir. 1979) (trial court prohibited cross-examination of government witnesses concerning an internal DEA investigation into the possibility that two of its agents had given perjured testimony in an effort to obtain a conviction; conviction reversed).  The personnel and internal investigation files of all law enforcement witnesses should be disclosed to defense counsel.  See, Renshaw v. Ravert, 82 F.R.D. 361, 363-64 (E.D. Pa. 1979) (complaints directed against defendant police officers and disciplinary or internal police investigation and review of those complaints discoverable from official personnel files or records in civil damage action since these are matters which affect the credibility of these witnesses or which might be used in cross-examining or impeaching them at trial).  See generally, Sherman, Enforcement Workshop: Obtaining Access to Police Internal Investigation Files, 15 Crim. L. Bull. 449 (1979); Brenner, Criminal Discovery of Citizen Complaints Against Law Enforcement Personnel in 2 Seventeenth Annual Defending Criminal Cases: a Practical Look at Current Developments in Criminal Law 1145 (PLI 1979).  As pointed out by one commentator, "[t]his information is extremely valuable to the criminal or civil practitioner in thoroughly investigating and preparing any cases where the credibility of a police officer is at issue."  Snyder, Discovery of Police Personnel Files in Criminal Proceedings, 52 Fla. Bar J. 119, 122 (1979).  For purposes of the present motion, the Defendant's

requests are aimed at files to which the government has access. As to personnel files (government or otherwise) and internal investigation files, all should be disclosed on the authority of the cases cited above. As to government files generally, all should at least be identified so that specific and appropriate motions or process can then be addressed to them.

      6.      If the witness is an informer, accomplice, co-conspirator, participant in a witness protection program, undercover agent or expert, the defense should be advised of all occasions, known to the government, on which the witness has previously testified even if the government discerns no relation to the case at hand. See, McCormick, Evidence, §34 at 69 (2d ed. 1972) (courts should lean in favor of admitting prior, arguably inconsistent statements to aid in evaluating testimony and because of the prospect that earlier statements may be more trustworthy and less influenced than the testimony itself; "A logical extension of this reasoning justifies the admission of prior testimony about an independent and unrelated event so similar to testimony now given as to arouse suspicion of fabrication.") As to crucial and inherently suspect witnesses, the accused must have the greatest possible latitude in investigation as well as in cross-examination. See, e.g., United States v. Mayer, 556 F.2d 245, 248-49 (5th Cir. 1977); United States v. Alvarez-Lopez, 559 F.2d 1155, 1160 (9th Cir. 1977). The case of Johnson v. Brewer, 521 F.2d 556 (8th Cir. 1975), clearly illustrates this point.

      In Johnson v. Brewer, the court granted federal habeas corpus relief to a prisoner who had been convicted on the testimony of a paid informer. At his Iowa state trial, petitioner offered to prove that the witness had lied and attempted to name a defendant in another drug trial in Michigan. In light of the witness' modus operandi as an undercover agent, of his career status as an informant which depended on a continuing relationship with state authorities, of the possibilities of bias arising

from the fact of the prior lie and the career status, and of the perceived unreliability of informer witnesses, the Court of Appeals concluded the jury was entitled to know of the Michigan testimony. The exclusion of the evidence amounted to a denial of due process. Similarly, failure to grant the disclosure requested herein may amount to a denial of due process. In Mesarosh v. United States, 352 U.S. 1 (1956), the Supreme Court reversed a number of Smith Act convictions when comparable evidence of untruthfulness in other proceedings was brought to the Court's attention by the Solicitor General. Briefly, it was disclosed that one of the seven government witnesses, Joseph D. Mazzei, had testified about Communist Party activities before the Senate Permanent Subcommittee on Investigations, before the Senate Subcommittee on Internal Security, in Miami disbarment proceedings against one Leo Sheiner and at a secret proceeding and, further, had filed a petition in Pennsylvania state court to set aside his guilty plea to charges of adultery and bastardy. The Solicitor General advised the Court of information which had come into the government's possession which gave it "serious reason to doubt the truthfulness of Mazzei's testimony" in some of those proceedings although it believed "the testimony given at the trial [in this case] was entirely truthful and credible." 352 U.S. at 4. Thus, the government's motion suggested a remand to the trial court for a hearing on the truthfulness of Mazzei's trial testimony. Id. The Supreme Court denied the government's request and, relying upon its supervisory power, reversed all of the convictions outright and remanded the case for a new trial declaring that, "[t]he dignity of the United States Government will not permit the conviction of any person on tainted testimony." 352 U.S. at 9. The Court's reasoning was that since the witness gave untrue testimony in other proceedings in the same field of activity, his testimony in the immediate case was inevitably discredited. 352 U.S. at 10- 11.

The Mesarosh principle has been applied to the testimony of federal undercover agents. In

United States v. Chisum, 436 F.2d 645 (9th Cir. 1971) and United States v. Miramon, 443 F.2d 361 (9th Cir. 1971)(per curiam), defendants convicted of narcotics offenses moved for new trials based upon the subsequent return of an indictment charging five DEA agents with conspiring to corrupt justice, to make false statements, to commit perjury, to suborn perjury and to deprive constitutional rights in an effort to convict a defendant of violating the narcotics laws in an unrelated case. One of these agents had acted as an undercover agent and testified as a government witness in both Chisum and Miramon. Another had acted as a surveillance agent, but had not testified, in Chisum. Eventually all five agents pleaded guilty to one count of the indictment as a part of a plea bargain. The Court of Appeals set aside the convictions of the original defendants because the credibility of the undercover agent was a vital factor in the case and the taint of the other cases was relevant to the case in question. Thus, based upon the reasoning of Johnson v. Brewer, Mesarosh, Chisum, and Miramon, the existence and identification of all prior testimony by informers, accomplices, co-conspirators, participants in a witness protection program, and undercover agents should be disclosed to enable the defense to prepare for relevant cross-examination in the present case. See also, United States v. Hitchmon, 609 F.2d 1098 (5th Cir. 1979). The same capacity to assess all prior testimony of expert witnesses is also necessary if there is to be true confrontation and cross-examination. See, McConnell v. United States, 393 F.2d 404 (5th Cir. 1968) (defendant entitled to impeach handwriting expert by showing mistaken identification at another, albeit related, trial).

    7.    This item is a catch-all. The request embraces information which impeaches the witness' competency and his capacity and opportunity to observe, remember, recall and narrate as well as his character for veracity and his partiality (prejudice, bias, motive, interest and corruption).

Thus, a defendant has the right to attack the credibility of a witness against him by "showing a defect of capacity in the witness to observe, remember or recount the matters testified about." McCormick, Evidence, §33 at 66 (2d ed. 1972). Thus, for example, if the witness cannot hear well the jury should be told of this problem to assist it in evaluating the accuracy of what the witness says he heard. The same right applies to mental problems. The leading case applicable in this Circuit is United States v. Partin, 493 F.2d 750, 762-65 (5th Cir. 1974), where the Court of Appeals reversed a conviction because the trial court excluded medical records offered as a predicate for cross-examination and would not let the jury hear the expert opinion of a psychiatrist called by the defendant. Judge Coleman, speaking for the Court, explained the applicable principle in these terms:

> The readily apparent principle is that the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth. It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing. It all goes to the ability to comprehend, know, and correctly relate the truth.

493 F.2d at 762 (citation omitted); see, United States v. Lindstrom, 698 F.2d 1154 (11th Cir. 1983). See also, United States v. Society of Independent Gasoline Marketers, 624 F.2d 461, 466-69 (4th Cir. 1979) (following Partin and reversing convictions).

The same principle also applies to drug related impairment of faculties. E.g., United States v. Fowler, 465 F.2d 566, 570-74 (D.C. Cir. 1972). And, since such mental impairments can undermine the capacity to remember and recount accurately and honestly at the time of trial, the full history right up to present times is relevant. See, Wilson v. United States, 232 U.S. 563, 568 (1914). Further, for a bizarre example, if the government knows that hypnosis or hypnotic age regression have been used in the preparation of its witnesses, the defense is entitled to pre-trial disclosure of the facts. United

States v. Miller, 411 F.2d 825 (2d Cir. 1969); Emmett v. Ricketts, 397 F.Supp. 1025 (N.D. Ga. 1975).  Such methods are not unknown.  Likewise, if the government knows that "truth serum", polygraph examination or other so-called "lie detection" techniques have been used in the preparation of witnesses, it must disclose the facts, United States v. Hart, 344 F.Supp. 522 (E.D.N.Y. 1971), at once so that the defendant can employ expert advice to analyze the impact upon the witnesses.  Any argument that evidence, such as polygraph results, is inadmissible only buttresses the argument for discoverability for purposes of fairly gauging the effect of such unscientific methods upon the witness.  See also Fed.R.Crim.P. 16(a)(1)(D).

The government has the duty to disclose, upon request, information about any subject matter if the accused has a substantial basis for claiming materiality to his defense.  See, United States v. Agurs, 427 U.S. 97, 106 (1976); United States v. Thevis, 84 F.R.D. 47 (N.D. Ga. 1979).  This duty specifically includes evidence of "basic mental trouble" suffered by a witness.  Carter v. Rafferty, 826 F.2d 1299 (3rd Cir. 1987); Wiman v. Powell, 293 F.2d 605, 606 (5th Cir. 1961) (granting federal habeas corpus relief); Powell v. Wiman, 287 F.2d 275, 278-79 (5th Cir. 1961).  Thus, the prosecution must comply with a pre-trial motion for production of "[a]ny and all scientific or medical, psychiatric or other reports which might tend to reflect on the credibility or competence of any of the prospective witnesses for the State." Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980) (granting federal habeas corpus relief).  Likewise, the prosecution must comply with the present specific request as a result of fundamental due process principles.  See generally, Brady v. Maryland, 373 U.S. 83 (1963).  Additionally, the government must disclose all remaining information which impeaches the witness' character for veracity and his partiality (prejudice, bias, motive, interest and corruption).  Thus, specifically, the government cannot suppress, and must

disclose, evidence of chronic perjury by the witness. See generally, Mesarosh v. United States, 352 U.S. 1 (1956). We have already pointed out that a witness' appetite for drugs must be disclosed. So, too, must his distaste for a defendant, see United States v. Haggett, 438 F.2d 396, 400 (2d Cir.), or for those of his ilk, see, United States v. Kartman, 417 F.2d 893, 897 (9th Cir. 1969), since such feelings are akin to prejudice and/or bias against the defendant. Likewise, if the witness himself is under investigation by the government, his partiality may suffer under the pressure. See, Greene v. Wainwright, 634 F.2d 272 (5th Cir. 1981); United States v. Hitchmon, 609 F.2d 1098 (5th Cir. 1979). This list could go on and on. Impeachment comes in many forms and to the extent that the government recognizes it -- either by virtue of the flagging in this motion or otherwise -- it should not be suppressed.

8.      And, if the government seeks to make its proof against the defendant by introducing the declarations of non-witnesses, the defendant is still permitted to impeach the declarant. Fed.R.Evid. 806; United States v. Bovain, 708 F.2d 606 (11th Cir. 1983); United States v. Wuagneux, 683 F.2d 1343 (11th Cir. 1982); United States v. Glenn, 473 F.2d 191, 195 & n.1 (D.C.Cir. 1972) (suggesting that under proposed Rule 806 an excited utterance, admitted as a hearsay exception under proposed Rule 803(2), could be attacked by proof of the high percentage of alcohol in the declarant's blood contemporaneous to her making the statement). See generally, 3 Wigmore, Evidence §884, at 376-77 (3d ed. 1940); McCormick, Evidence, §37, at 73-74 (2d ed. 1972).

The principle is simple. The Advisory Committee's Note to Rule 806 puts it this way:

> The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609.

Accordingly, "in fairness," the prosecution should be required to disclose the requested impeaching information.

### III.

### CONCLUSION

The right of counsel for the accused to confront, cross-examine, and impeach is cherished and remains "the principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974) (Burger, C.J.).  Our specific requests for exculpatory and impeaching information are highly material to defense counsel's investigation and preparation for precisely this venerable mission.  See generally, United States v. Opager, 589 F.2d 799 (5th Cir. 1979).  As the Supreme Court has emphasized:  "[D]isclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." Dennis v. United States, 384 U.S. 855, 871 (1966).  See also, 8 Moore's Federal Practice §16.06[2], at 16-126 n.37 (1982) (expressing hope that criminal process may some day require prosecution to turn over all materials in its files).  These fundamental precepts require that the motion be granted.

Respectfully submitted this 25th day of January, 2019.

>s/ W. John Toner, IV
>Georgia State Bar No: 650012
>Attorney for Defendant
>Toner Law, LLC
>PO Box 8806
>Savannah, Georgia 31412
>Telephone: 912-376-9933
>Email: john@tonerlawllc.com